Thank you, Your Honor. May it please the Court, my name is Chris Curtis and I represent the appellate, Mr. Brandon Leal, in this case. The primary issue that's here before the Court this morning, I believe, is the $58,415 ordered in restitution, and the question is whether or not the district court committed plain error in ordering that restitution. There's two categories of restitution in this case, and I think it's pretty clear from both apportionment of pre-litigation losses suffered by the victim, Andy, and that amount arises to $25,000. The second category is the losses that were incurred preparing the request for restitution. Mr. Leal, would you talk about waiver first? Mr. Leal Yes, Your Honor. Mr. Curtis I don't see a case where there was a specific waiver of the order of restitution. Did you find a case like that? Mr. Leal Just the two Fourth Circuit cases that I've cited, there's two unpublished cases. I believe Frazier is the one most on point. The government cited it. Mr. Curtis That wasn't an explicit waiver of restitution, was it? Mr. Leal Correct, Your Honor, and in this particular case, the exception to the waiver, there is no exception for the statutory maximum, which is where, you know, Winchell and Jimenez and the line of cases that we're all aware of at this point. Mr. Curtis My problem is, you know, the Supreme Court says that we enforce waivers of the most important constitutional rights, like right to testify, can't write to effective assistance of counsel. Well, what would be the rationale that you can't waive restitution? Mr. Leal It would be this. In some restitution, you can waive, Your Honor, if you're talking about sufficiency of the evidence, but under Paroline, we're talking about a statutory maximum restitution. And the analogy would be if you were convicted of a Federal offense that had a statutory range of zero to five years, and the judge imposed a sentence of life. Well, certainly, and yet we have a waiver of appeal with no reservation or exception for statutory maximum, a sentence in excess of the statutory maximum. Obviously, this Court has to have the jurisdiction, the ability to review a sentence. I think it's obvious. And I think the Fourth Amendment or the Fourth Circuit cases address this, point that out. This Court has to be able to address a sentence that's an illegal sentence that exceeds the statutory maximum. And that's what we have in this case with regard to the restitution, because we don't have a Paroline analysis. Paroline Supreme Court, you know, that we have to have a proximate cause analysis, and part of that is an apportionment analysis. And we don't have that with regard to either one of these categories. The waiver, I mean, often we spend more time on waivers than we do on the merits. It seems like it does. But still, a couple related quick questions. Winchell makes it binding on us that what? I'm sorry, which? Winchell binds us that what? That what? Is that a question? Is that like fill in the blank? Yeah. Winchell binds us, including us representing the client on appeal, it binds us to look and see whether a Paroline analysis was made with regard to restitution. And if it's not, it's just got to go back. You can't say Paroline's procedural as opposed to substantive. It covers the territory. If there's a Paroline error, that's a stat max issue. I — absolutely, Your Honor. And then you draw the sentence from Keele, which — do you remember Keele? Yes, Your Honor. Got it down here. What is it? What did we say? What did we say there? I'm sorry. I'd have to go back and look at my brief, because I took Keele and — Well, you can't waive an illegal sentence. Right. That's it. And then if you go — that's exactly right. Keele and Frazier and Havens are the two cases that address that. Now, factually, the restitution issue coming to us, because this was this odd multiple sentencing at once. Yes. The restitution issue that you're pressing did not have the explicit waiver, even if you could. Correct? Exactly, Your Honor. If you go back and look at the plea agreement on this case, and it's a — boy, it's a bit of a soup sandwich to unwind this record. Yeah. But if you go back — and, in fact, at one point, this Court asked me to brief the issue of whether the restitution order was even entered on the correct one. The harder case would be the other one, where he says he waived something that we would then have to decide can't even be affirmatively waived. That would be the harder case. But we don't have that factually. Exactly. And I don't think — we wouldn't even be having this discussion, I think, under Winchell, Paroline, and Jimenez, that the other case, he actually did reserve an appeal of a sentence in excess of the statutory maximum. Yeah. And that language is — That's true in Winchell, too. Yes, sir. Yes, absolutely, Your Honor, which is why I'm saying I don't think we would — if we were on the other case, we wouldn't even be having this discussion right now about waiver. But the answer to your first question, Your Honor, is that, yeah, if you go to the plea agreement, it doesn't have an exception for a sentence in excess of the statutory maximum. So based on what I can find is you have to look at the Fourth — or the Fourth Circuit cases that I've cited as some sort of guidance that specifically addresses that, that you just — you can't — you can't waive — It would make sense that the defendant, the government, want to put in exception for ineffective assistance. But the reality is it's always going to be there, whether you put it in or not. Correct. Yeah. Or like sentencing based on race, things like that. Right. And I think the — Are those all in the category of miscarriages of justice and — Absolutely, Your Honor. And I think that — you know, I think the rule is simple here, is if you have a sentence in excess of the statutory maximum, then a waiver — you can't waive that. And that doesn't apply to all restitution. I think that's really important to address, is that doesn't mean every order of restitution is — is going to result in some sort of remand, or we get to appeal it and the waiver doesn't apply. That's not true. When you're talking about sufficiency of the evidence, then that's — and the case law out of this Court is clear on that as well. If we're talking about sufficiency of the evidence, then no, it's not a statutory maximum issue. If you are thinking about a matter of justice, I mean, what facts are in this record that would allow the judge here to make any more explicit analysis than he did? Your Honor, the facts in the record I don't think are there. That question is an excellent question because I don't think the facts would justify, if you take the 22-page letter that was submitted by Victim-Andy. However, I think under CMI and Jimenez that — CMI is the case out of this circuit cited in Jimenez — that actually, on this issue, at least with regard to the Victim-Andy, the Court can — the government could go ahead and present additional — that's an exception in this situation where the government could present additional evidence justifying the restitution award. But that wasn't done here. I'm sorry, Your Honor. It was not done, was it? It was not done, but in all fairness, it wasn't objected to. Well, the government objected. And that's when the Utah Victim-Andy — That's correct, Your Honor. Yes. They get the 20-page. But the district court affirmatively adopted the addendum. It did. It did. So it's a finding. And just to push you at least where I would want to go on the merits question, it seems like you've got 20 pages of careful Paroline discussion, and you're jumping from, what, two million down to 25,000. I mean, Paroline's a blurry rule, but it seems like that's a sufficient plain error cost. Then — then you just have three paragraphs in that report that are devoted to the expert cost. So that is much more difficult for me to understand how Paroline would be complied with. I agree 100 percent with that statement, Your Honor. I think that when you get to the 33,000, the Category 2, if you will, that — that the problem is it's 100 percent apportioned to Mr. Leal. And there's — the bigger problem is, is there's no — absolutely no proximate cause analysis in that two- or three-page section when they're discussing about 33,000. But if the Utah report had not admitted that it was being sent to other cases, would it — would it then be plain error for the district court to attribute it all to Mr. Leal? I think it still would be. But I think the fact that they've admitted right in there that — and readily admitted that this request has been made to other courts for this 33,000 — I mean, the plain error is right there in the letter. It's got to go back and have some sort of proximate cause and apportionment analysis by the district court. And — How simple would that be? I mean, it isn't — right, there is a difference between victim losses that — that Andy suffered as to severity and which photos Andy had, all the bucket that was so hard for courts and then the Supreme Court. As opposed to these targeted sentencing memos, where that's the loss, how — would it be as simple as government, how many other cases has this report been sent to, hence this divide? Is that how it would be? I think it's that simple, Your Honor. There might be some more — you know, there might have to be some more discussion about, you know, are there any other cases or do we expect more cases filed, and the requests filed in more cases. But I think that the district court is not going to be handcuffed, as long as they're making some sort of analysis that's clear under Paroline, clear under Wenschel and Jimenez out of this Court, that the district court's not going to be handcuffed if it uses some sort of rational basis to go, okay, well, this is — how many cases that it's been filed in. It's that simple. Whereas the 25,000, I agree, is not nearly as simple. I'm not waiving my argument that I — I think if you really boil down the 22-page letter that the — the 25,000 is — there's not a very in-depth approximate cause analysis there either. But I understand there was no objection made. It's 25,000 out of 2.1 million. The bigger and more obvious harm and the bigger, more obvious amount of money that needs to be remanded for reconsideration is the 33,000. I don't think there's . . . And the sophisticated, repeat institutional actors, that Utah group, the government, federal defender, the report's right there, it's talking about Paroline and no one says to the district court, hey, do the math. It's frustrating to have to remand for things like that. But . . . It — I certainly understand the Court's question on that. And I, you know, I don't — I'm the appellate attorney on this case, and I usually am. But I think that — I think that the trial attorneys in these situations are — these sentences are huge, and they're worried about — they're worried about the prison sentence. They're worried about the practicality of the situation, too. I mean, is there any case that says that we can't consider the ability, the means of the defendant when we — when the court or the district court can consider the means of the defendant? Does he have the ability to pay? You know, I don't think we're allowed to do that at this point, Your Honor, because of the Mandatory Victim Witness Act. If there's that much restitution, it's required to be ordered. What case says that? That's the — probably several cases. It comes right out of the statute, though. It comes right out of the Mandatory Victim Act. And — It's clear here this guy is facing a 30-year sentence. He's not, yes. And there's a finding that he doesn't have the — he doesn't have the means to pay a fine in the PSR. He's — that's clear, and he's not likely to be able to pay much other than if he gets a good job in the laundry or the welding shop. He might be able to pay $10 a month. And I understand that, too. I understand why that's — that's something that needs to be addressed. And — Yes, Your Honor. We are — our court, as well as others, are doing plain-error, paraline reversals, aren't we? Absolutely. It still is. But, you know, we've got a general rule that when there are questions of fact presented and there's no objection, there's no plain error. That — there is a general rule. The problem is this is not an issue of the question of fact in the sense that what we're talking about is the analysis just didn't get done, especially with regard to the $33,000 that the court is — The judge didn't have any facts to work with, did he? Not with regard to that $33,000, no. I think — I think Judge Higginson pointed out that — The judge can't investigate the case and bring the facts up. No. But I think the judge certainly — when he adopts — when he adopted that addendum and ordered the $33,000, there just was not any paraline or approximate cause analysis at all that complied with paraline or Winchell. And so I think that's why it's not a fact issue. It's a straight-up legal issue and application of the law. So I think it — especially with regard to that $33,000, it just has to be remanded. And again, I'm not waiving my argument on the $25,000, but I — it's obvious to anybody who's read the record that there's a distinct difference between the two amounts, the two categories. I believe I'm out of time, so I'll give some — a few seconds back to the court unless  Thank you.  Mr. Magliolo. Magliolo. Magliolo. Yes, Your Honor. May it please the Court, Joe Magliolo for the United States. This Court should dismiss this appeal for two independent reasons. It should first dismiss this appeal because Mr. Leal knowingly and voluntarily waived his right to bring it. And second, it should separately dismiss this appeal because the Court lacks jurisdiction given Mr. Leal's failure to file sufficient notice of appeal from the case in which the restitution award was entered. That said, should the Court reach the merits of the Paroline argument, it should find that the District Court did not plainly err when it entered a reasonable and Paroline-based restitution award in favor of the sole child pornography victim at issue in this case. I'd like to start where the Court started with the waiver issue, however. And I'd like to first point out, I think that this is not actually a true challenge to the statutory maximum restitution award. I think what this Court's cases have made clear, that the statutory maximum at issue in an MVRA case is not the subset of damages which a defendant was ordered to pay, it's the total amount of damages. So an amount exceeding the statutory maximum in a case like this is not $57,000. What it is would be some amount greater than the $2.1 million that Andy was seeking. And as a result, I understand what my friend Mr. Curtis is doing, but I think what he's doing is trying to masquerade a challenge essentially to the apportionment analysis as a challenge to the statutory maximum as a way to get around his appellate waiver. Sotomayor, I mean, you don't cite Winchell until late in the brief, but why isn't that issue decided? I don't think it's as clearly decided as the Court suggests. I mean, there is a reservation. There is the separate issue that there's a reservation of the right, the challenge of sentence exceeding a statutory maximum in Winchell. And I think what the Court in Winchell was saying was that any sentence, any restitution order rather, where there is a total absence of evidence tying the defendant to the restitution award necessarily exceeds the statutory maximum. So in that case, any amount over zero would have exceeded the statutory maximum given the lack of evidence before the Court to the lack of connection the district court made between the victim in that case and the defendant. In a situation like here where I don't believe my friend is challenging that Andy's total damages are $2.1 million, I don't think he's even challenging that he personally caused some subset of those damages. I think what he's challenging is the amount and the methodology. The methodology. He's saying, especially as to the $33,000, they didn't even do a paralene apportionment. There was none done. So I guess I'm going to ask you, and I say this with self-blame because I think on the unpublished decisions you cite where we did apply waiver, I was on at least one of them. But in each of those cases, the Court goes on to look at the merits. The Court didn't stop at waiver. And I'm wondering, is there any circuit authority that you can cite us, circuit authority elsewhere, publish, that would not perceive a failure to do the paralene methodology to be a stat max problem? I'm not aware of any, Your Honor. So we'd be creating a split with at least several circuits. I apologize. That may well be the case, although I'm not sure that my friend cited any of those cases in his brief. I think the Fourth Circuit case is all preceded paralene. It may well be the case that since that time, they've developed that idea. But I'm not aware of other circuits having reached that. And I've always wondered this, if you don't know, it is relevant. We can dis – correct me if I'm wrong – we can disregard appeal waiver. That's a contract between you and them. But the Court of Appeals can disregard it, yes or no? Certainly, Your Honor. It's not jurisdictional. Okay. And we don't even have to say because it would cause a miscarriage. We can just reach the issue? I believe that's correct, Your Honor. That's what I thought. I believe that's correct. But then if we did that, would we have to put you back at square one to be able to renegotiate the plea? Or could we just address the issue, find sentencing error, remand for resentencing? I think you can do that, although I don't think it's appropriate in this case, given the paralene analysis that's taken place. Which would get us to the merits. Correct, Your Honor. Concerning the paralene analysis, I'd like to address the cost issue, because I'm happy to answer questions. That's the trouble. Sure. Well, the cost issue, I disagree that there's no paralene analysis with respect to the cost. I can see that it's on page 261 of the record. There's no explicit reference to paralene there like there is throughout the record. You just gave it one paragraph. Well, it was a one-paragraph request, Your Honor. But what it did do was, I think it gets to the heart of what paralene is looking to do. Paralene is looking to make sure that a defendant is only tagged with costs that they approximately caused. And in Andy's view, Mr. Leal approximately caused all of those costs. Now, he does not contend, nor do I contend, that he is the only approximate cause for all those costs. But I think, in other words, Mr. Leal caused Andy about 1% of his general damages. Oh, you're talking about the losses, the harm, not the economic report. Well, I am talking about the economic report, Your Honor. The point I'm trying to make, and perhaps... Because I agree, it's 1% as to his loss seems probably to satisfy whatever the exact test paralene is. But when you get to the report and the very honest statement by that victim, Utah Group, that this same exact report is being used in other cases, that presents a fairly stark paralene problem. I agree that on its face, it's certainly a much more difficult question than with respect to the general damage costs. But I think the issue is, with those costs, what Andy was pointing out was, Mr. Leal is the approximate cause of all of the costs related to that report. All 33,000. He's not the only person who did that. He concedes, and I certainly concede, that all of the people who viewed these images, who caused Andy's general damages, are also an equal approximate cause of those costs. But there's not an apportionment here. Because as he points out, if Mr. Leal had been the only person to have viewed these images, the only person to have caused him any general losses, well, that general loss number would have been much lower. But the cost amount would have remained the same. Did Leal arrange for the services that the costs are owed for? Do you mean, did Andy do so, Your Honor? Yeah. His attorneys at Utah's Victim Center, I believe they did so. And so . . . They owed his behalf? What's that, Your Honor? Defendant's behalf? It was for . . . was it for this specific case? I don't believe it was, Your Honor. I think this letter and report and analysis was created ahead of time. The argument is one that struck me as the one you're making. But then I guess I'm just wondering, statutorily, does 2259 distinguish between general losses and costs? It does not, Your Honor. So is there a case that does that? It makes sense, but it still isn't being apportioned. Is there a case that supports the argument you're pressing, which I understand? I'm not aware of one. But even still, I think it's the proximate cause analysis that ought to lead this Court to affirm on those costs and the plain error standard of review. With respect to those costs, again, there's no case that I'm aware of in the circuit, and this goes to the second prong of plain error review, no case in the circuit, and I don't even think even Paroline suggests, that there has to be an apportionment in a situation where there are multiple proximate causes for the same pot of costs, which is to say, each person is individually liable for 100% of those costs. Each person was the cause of 100% of those costs. That's not the case with the general damages. Each person, with respect to the general damages, is responsible for a much smaller sliver. But where each person is responsible for 100% of the proximate cause, is the proximate cause of all of those costs. So if Andy's the only person, he still needs a psychological evaluation, he needs an econometric evaluation, to get to a point where he can make a restitution request, all the record says is that he would have to pay $33,000 if Mr. Leal alone had been the person to view those particular images. And I appreciate the... The record confirmed that no one yet has been, has had that report cost attributed to them? The record is silent on that front, yeah. That's correct. We don't, I mean, to make any kind of apportionment, don't you have to have some idea of the number of victims? Absolutely. I mean, absolutely. I mean, it goes back into the heart of the difficulty of applying Paraline. I mean, does the government have access to information about how many victims have been, restitution awards have been entered against? Against... I can represent to the court that I know Andy has recovered, I think, somewhere between 10 and 13% of his total damages. I cannot, that's not in the record, and I can't speak to how many defendants, if any, have paid towards these costs. But you don't deny that that burden is clearly on the government, 3664. You have to make the showing. Absolutely, Your Honor. And where that showing, I think, is strongest for us is based on that proximate cause analysis. And there being no court, no case in this circuit, no case otherwise, given that this is a plain air standard review, I think there would require some extension of existing precedent, which I think is inappropriate on plain air. And as a result, these costs ought to be fairly apportioned to Mr. Leal. If the court would permit me to speak a bit about the jurisdictional issue. Yeah, I mean, it's pro se counsel, and it was multiple sentences, right? Neither of those were in the case DeLuna you cited. That's... It was pro se, had counsel, and it said sentence. That's correct. Well, Your Honor, as far as the singular sentence being referenced, I don't recall. That could well be the case. But I think what's important here is that there's only the single judgment referred to. And in the case one, that's the case where there's two sentences and no restitution order. That's what I think he was referring to in that notice of appeal on page 88, because all he does is reference the cause number, one judgment, a singular judgment, not both that day, and the two sentences. And they were the stiffer sentences in that case, whereas case two has only the single sentence and the order of restitution. And I think that's what brings it sort of within the DeLuna case, given the similarities between the two. But I appreciate that this may not be the issue on which the court would like to decide the case. If the court has no further questions concerning the merits or jurisdiction, I'd be happy to cede the balance of my time, and I'd ask the court to dismiss this appeal or affirm the restitution award. Thank you, Your Honor. I'd like to go straight to the jurisdiction issue. First of all, I want to respond before I forget to the idea that the reference in Mr. Leal's notice of appeal to appealing the sentences might possibly refer to the multiple counts in one cause number. I just think that that flies in the face of any logic and any experience we have. That sentence in that single cause number is one aggregate — total aggregate sentence. Yes, they sentence certain amounts of time on individual counts in a multiple count indictment, but in the end, it is one total aggregate sentence. And Mr. Leal, in his notice of appeal, specifically said that he wanted to appeal the sentences imposed on August 15th. And those sentences were imposed in one sentencing hearing, not — He's pro se. I think the — really, the one thing I'd love to hear your response to is on plain error, I suppose he's got a point that it may be error, but is it clear error if we or no other courts ever said as to the expert cost how and when that has to be apportioned Absolutely. And I appreciate the question of the Court. The reason it's clear error is because — we'll start with Paroline. Paroline is specifically referring to 2259, the losses that are enumerated in that list of losses that have to be proximately found. And by the way, that language is in the statute. No, I know that. But a report for a sentencing is different than the harm to the child. Absolutely. But it's listed. It is. I mean, the cost of — in 2259, I forget which subnumber it is, but it's listed. That specific loss is one of the losses listed in that statute. Do you know of a circuit case where that's a — No. No, Your Honor. I'm sorry I interrupted you. Oh, no, no. Apologies. No, but I think it's — but the other thing is, is we know, we know from Paroline and we know from Winchell and — that you have to do the proximate — any loss that comes from 2259, and I don't think the government can argue that this loss — that loss in connection with submitting the reports, that that is authorized to be recovered anywhere but 2259. And we know that there has — 2259 itself says there has to be a proximate cause analysis. And, you know, when you look at the 22-page letter, it jumps out at you when you really go back and look at it. It's easily done. You just ask them, how many other places have you sent it? It's easily done. Why? And they — you know, if they need to present, I think, pretty sure under Jimenez, referring to the CMI case, that if they've got to present some additional facts, that's their — this is an exception. As with regard to victim Andy, the victim who actually submitted a request, they're allowed to do that. They're allowed to submit additional facts for their request for restitution for Andy. And that's the — that seems like the fair and just and right answer anyway, if you remand it to the district court, say, hey, you missed this Paroline analysis here. It just seems just and fair that the district court would get to do a full analysis, that they wouldn't be limited by, oh, well, all you've got is this 22-page letter. You're not allowed to, you know, make any kind of other — the judge isn't allowed to ask the government any other questions or something of that nature. So it is plain error, and it's clear. It's clear error. I think it's clear to everybody, when you stop and you look at this particular order of restitution and you go look at the request from Utah, it shows that — it just jumps out at you that there was no Parchman calls or Parchman analysis with regard to the 33,000. I also think that could be argued as far as the 25,000 is concerned, because the seven factors that we know, and the letter itself lists the seven factors from Paroline, and yet there's no seven — none of the factors are applied. They just use the mandatory minimum for a civil lawsuit as a guideline to come up with a 25,000. But that's not as glaring as the 33,000. The other thing that's glaring about the 33,000 that jumps right out to you is it's been submitted in other cases. The letter itself says that. And that should make it clear to the judge that, oh, well, we've got to do some apportionment here. Thank you. I'll take the third case.